500 A.2d 886

**Henri Haim ZERBIB**

v.

**NATIONWIDE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1985.

Filed Nov. 8, 1985.

James C. Haggerty, Philadelphia, for appellant.

Edwin P. Smith, Philadelphia, for appellee.

Before SPAETH, President Judge, and HOFFMAN and HESTER, JJ.

HESTER, Judge:

This is an appeal from the January 16, 1985, order granting summary judgment in favor of appellee, Henri Haim

Zerbib, on his claim for No-fault motor vehicle benefits.[1] Appellee's complaint alleged that appellant insurer wrongfully refused to pay for vocational rehabilitation in the form of educational expenses for an intensive English language program. We hold that summary judgment was improper, and remand for trial to resolve material issues of fact as to the reasonableness and necessity of the educational expenses.

On October 20, 1982, appellee was injured in an automobile accident which disabled him in his occupation of constructing swimming pools. Dr. Samuel Romirowsky, a clinical psychologist, one of the physicians who had treated appellee following his accident, wrote to appellee's attorney on April 15, 1983. The letter stated:

> As you know, I have been treating Mr. Henry Zerbid [*sic*] for the treatment of severe depression. This letter is to document that from an emotional standpoint, work, that is employment, would be excellent therapy in as much [*sic*] as his poor self esteem and depression is [*sic*] exacerbated by his unproductivity. Because he is physically unable to do the kind of work he was doing prior to his accident, vocational rehabilitation is essential in order to obtain retraining and other employment.
>
> In order for Mr. Zerbid [*sic*] to obtain maximum benefits from a vocational rehabilitation program, he must have a better command of the English language, both verbal and written. It is my feeling, therefore, that an intensive English language program would also serve to, in the longrun, [*sic*] reduce Mr. Zerbid's [*sic*] depression.

Reproduced record at 39a.

Appellee, aged thirty-three, had been a resident of Israel and France prior to emigrating to America. Dr. Romirowsky referred him to Dr. Irwin Farbman for a psychological evaluation. Dr. Farbman noted that appellee's "speech was

---

1. 40 P.S. § 1009.101 *et seq.* Repealed February 12, 1984, P.L. 26, No. 11 § 8(a), effective October 1, 1984.

heavily accented. Although he was able to communicate effectively, it was apparent that he often was forced to substitute a related word for the one he would have preferred in order to express his precise thought since his vocabulary skills were insufficient to the task." *Id.* at 18a. It is not in dispute that appellee's command of the English language has not been diminished in any degree as the result of the accident. Appellee's use of the English language was just as limited prior to the accident as it was afterwards.

Appellee used his language training to enroll in a chef's program.

Appellant rejected appellee's claim for payment of educational expenses and filed a motion to compel an examination of appellee by Dr. Philip Spergel, a vocational rehabilitation psychologist. After the examination, Dr. Spergel made the following finding, as detailed in a letter to appellant's counsel. "Even if Mr. Zerbib was not provided with a remedial English course at Temple University, he still would be employable in a number of entry level, sedentary positions where literacy is not particularly important." Dr. Spergel cited the following appropriate jobs:

1) Armature Connector (electrical equipment)
2) Ampule Examiner (drug preparation and related products)
3) Braiser-Assembler (welding)
4) Solderer-Assembler (welding)
5) Tile Sorter (brick & tile)
6) Thermostat Assembler (instruments and appliances)
7) Inspector, General (any industry)
8) Patcher (electrical equipment)
9) Assembler (electronics)

*Id.* at 99a.

An arbitration hearing was held on the matter, and an award for appellee was entered in the amount of $1,237.90, the cost of his educational expenses, plus eighteen per cent interest and counsel fees of $656.15. Appellant filed an

appeal, and a jury trial was scheduled for January 16, 1985. Prior to trial, appellant filed a motion in limine requesting the court to rule on its request to introduce Dr. Spergel's testimony and other evidence developed during discovery.

Appellee filed an answer to appellant's motion in limine and a motion for summary judgment. Appellee contended that since appellant had no evidence disproving the need for vocational retraining at the time it denied his claim, the only issue was whether appellee had provided sufficient documentation of his claim. Immediately prior to the scheduled trial, argument was heard on both appellant's motion in limine, and appellee's motion for summary judgment.

The court asked appellant what was the basis for the denial of appellee's claim. Appellant's counsel responded:

The reasonable basis was that Nationwide was paying the wage loss. From October '82 until September of '83 Nationwide paid the wage loss benefits to this individual. That's almost a year. In May of '83 the Plaintiff went to Temple for this language retraining.

It is our position that we acted reasonably because when Nationwide made the decision they didn't have information as to permanent disability to require retraining. They paid the wages, and they paid the wages for a period of what they considered they had documentation for a disability.

During this period from October to September we also had the period in it from May to September when he was going to school. So we are paying his wages when he is disabled, and he is disabled for a certain period of time. We don't feel it is necessary that we should also have to pay to retrain him if it is necessary to return to work. He got another job in a restaurant school, which is a work study program where you go to school and work in a restaurant.

If I may, as far as the reasonableness and necessity, we feel that's a situation where expert testimony is needed. It is not a situation where it is so obvious to a layman that he can say that someone who is injured in an automobile accident needs vocational rehabilitation train-

ing. And in order to prove that he needs expert testimony. That's why we are bringing Dr. Spergel, who is an expert, to testify that it wasn't necessary.

N.T. 1/16/85, 7–8.

Appellee's counsel responded to appellant's assertion as follows:

If Your Honor please, the No-fault Act creates almost a separate system of law from that which ordinarily is used in trying civil cases. The No-fault Act says an obligator [*sic*] must pay a claim within 30 days of the date of submission of reasonable proof of the fact and amount of the loss. It does not say by a preponderance of the evidence. It does not say beyond a reasonable doubt. It says submit [*sic*] from the date he submits reasonable proof.

So the true issue as to the liability of the obligor insurer in this matter is whether Plaintiff submitted reasonable proof of the fact and amount of the loss. So you must look to what was submitted to the insurance carrier. It wasn't just one little letter from Dr. Romirowsky. You had numerous medical reports all stating he was disabled from the date of the accident and even beyond the point where they continued to pay ....

*Id.* at 9–10.

The trial court, unmoved by appellant's prior argument, again asked what reasonable proof appellant had for denying appellee's claim. Appellant's counsel replied that an obligor may deny an obligee's claim at the obligor's risk. The court responded:

Isn't that contrary to the nature of No-Fault? Isn't that contrary to the whole intent of that Statute, even though the thing never worked? Isn't that exactly why they shoved No-Fault down everybody's throat?—because we were supposed to obviate the lawsuits, not create them, not give insurance companies the subjective right to deny claims.

If you can deny that claim, you can deny any claim. They will always have an argument as to why a claim

shouldn't be paid. That's why No-Fault was put into existence.

*Id.* at 23.

Based on this reasoning, the court denied appellant's motion in limine and granted appellee's motion for summary judgment.

Appellant raises three issues: 1) whether the trial court erred in granting summary judgment when it was alleged that factual disputes existed with respect to the merits of appellee's claim for No-fault basic loss benefits; 2) whether the trial court erred in finding, as a matter of law, that appellee's educational expenses were reasonable and necessary when appellant contended it would introduce testimony establishing that the educational expenses were not reasonable and necessary; and 3) whether the trial court erred in its interpretation of the relevant provisions of the No-fault Act.

We must examine the relevant provisions of the now repealed No-fault Act. Appellee's claim for educational expenses is founded upon sections 102 and 103 of the Act which provide that allowable expenses are included under the basic loss provision of the Act. Allowable expense is further defined as, "reasonable charges incurred for ... medical and vocational rehabilitation services." 40 P.S. § 1009.103. The Act defines medical and vocational rehabilitation services as those which are:

> necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services ....

*Id.* The Act further sets forth what proof is necessary to sustain a claim for vocational rehabilitation services:

### § 405. Court order; rehabilitative training.

(a) Court order.—After a hearing upon application by any interested person and reasonable notice to all other interested persons, and upon findings supported by evidence, a court of competent jurisdiction may enter an order determining that an obligor of basic loss benefits applicable to an injury is responsible, subject to the limits and other terms and conditions of the coverage, for the cost of a specified course of rehabilitative occupational training that the injured person has taken or does hereafter take.

(b) Findings.—The findings required to support such an order are:

(1) that the specified course of occupational training is a recognized form of training and is reasonable and appropriate for the particular case;

(2) that it has contributed or will contribute substantially to rehabilitation; and

(3) that the cost of such training is reasonable in relation to its probable rehabilitative effects.

40 P.S. § 1009.405.

The other two provisions of the No-fault Act that concern the issues here are 40 P.S. §§ 1009.106(a)(5) and 1009.107(3):

### § 106. Payment of claims for no-fault benefits.

(a) In general.—

(5) An obligor who rejects a claim for basic loss benefits shall give to the claimant written notice of the rejection promptly, but in no event more than thirty days after the receipt of reasonable proof of the loss. Such notice shall specify the reason for such rejection and inform the claimant of the terms and conditions of his right to obtain an attorney. . . .

### § 107. Attorney's fees and costs.

Fees of claimant's attorney.—

(3) If, in any action by a claimant to recover no-fault benefits from a obligor, the court determines that the

obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

The trial court granted summary judgment because at the time of the denial of appellee's claim, appellant possessed no evidence for denying the claim other than the adjuster's belief that appellee's English classes were not necessary for his rehabilitation.

We hold that the entry of summary judgment was improper in this instance. Issues of fact exist as to the inquiries set forth in section 405(b), *supra*, pertaining to whether appellee's English language course was reasonable and appropriate, and was necessary to restore his physical, psychological, social, and vocational functioning. These issues must be resolved at trial. If appellee prevails, and the court again determines that appellant denied the claim without reasonable foundation, the award of attorneys fees would be appropriate, together with the interest payable on overdue benefits.

We reverse the order granting summary judgment and remand for trial in accordance with the relevant provisions of the No-fault Act. Jurisdiction is not retained.